IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

NOV 13 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| ANTONIO VILLARREAL, Individually, | § | |
| as Representative of the Estate of | § | |
| JOSE MANUEL VILLARREAL | § | |
| CABALLERO, as Representative of | § | |
| Maria Magdalena Saldivar, and as | § | |
| Representative or Beneficial Owner of | § | |
| The Villarreal Caballero Trust, | § | CASE NO. B-06-CV-138 |
| MARIA MAGDALENA SALDIVAR, | § | |
| Individually and as Representative or | § | |
| Beneficial Owner of The Villarreal | § | |
| Caballero Trust, THE VILLARREAL | § | |
| CABALLERO TRUST, on its own | § | |
| behalf and as Representative or | § | |
| Beneficial Owner for Cloverdip | § | |
| Investments, L.L.C., and CLOVERDIP | § | |
| INVESTMENTS, L.L.C., | § | |
| Plaintiffs, | § | (JUDGE HILDA G. TAGLE) |
| | § | |
| vs. | § | |
| | § | |
| JP MORGAN CHASE BANK, J. P. | § | |
| MORGAN TRUST COMPANY, N.A., | § | |
| JP MORGAN SECURITIES, INC. f/k/a | § | |
| or as successor in interest to CHASE | § | |
| SECURITIES OF TEXAS, INC., | § | |
| CHASE BANK OF TEXAS, N.A., JP | § | |
| MORGAN CHASE & COMPANY, JP | § | |
| MORGAN INVESTMENT ADVISORS, | § | |
| INC., CHASE MANHATTAN | § | |
| PRIVATE BANK (SWITZERLAND), | § | |
| J.P. MORGAN (SUISSE) S.A., | § | |
| ALPHPONZO GONZALES, EDUARDO | § | JURY DEMANDED |
| RAMIREZ, AND JOHN DOE(S), former | § | |
| investment managers or coordinators | § | |
| of investment accounts or assets in trust | § | |
| on behalf of the decedent or one or more | § | |
| of the Plaintiffs, whose identities are | § | |
| known to other defendant(s), | § | |
| Defendants. | § | |

## VILLARREAL'S FIRST ORIGINAL COMPLAINT

1.      ANTONIO VILLARREAL, individually, as the Representative of the Estate of Jose Manuel Caballero, as the Representative of Maria Magdalena Villarreal Saldivar, and as the Representative or Beneficial Owner of The Villarreal Caballero Trust, and MARIA MAGDALENA VILLARREAL SALDIVAR, Individually and as Representative or Beneficial Owner of The Villarreal Caballero Trust, THE VILLARREAL CABALLERO TRUST, on its own behalf and as Representative or Beneficial Owner of Cloverdip Investments, and CLOVERDIP INVESTMENTS, L.L.C. (jointly referred to as "Villarreal") file this First Original Complaint.

2.      This Original Complaint is filed by plaintiff Villarreal against JP Morgan Chase Bank, J. P. Morgan Trust Company, N.A., JP Morgan Securities, Inc. (formerly known as Chase Securities of Texas, Inc.), Chase Bank of Texas, N.A., JP Morgan Chase & Company, JP Morgan Investment Advisors, Inc., and The Chase Manhattan Private Bank (Switzerland), J.P.Morgan (Suisse) S.A., Alphonzo Gonzales, Eduardo Ramirez, and John Doe(s) who acted as investment managers or coordinators of investment accounts or assets in trust on behalf of the decedent or one or more of the plaintiffs. These entities shall sometimes be jointly referred to in this Original Complaint as "JP Morgan."

### Parties and Venue

3.      Antonio Villarreal is a United States citizen and a citizen of Mexico. He is domiciled in Mexico. Thus, he is not considered a citizen of any state of the United States. He is a resident of Mexico and of Texas. Antonio Villarreal has a residence at 3131 Creekwood Drive, in Brownsville, Cameron County, Texas.

4.     Maria Magdalena Villarreal Saldivar is a United States citizen and a citizen of Mexico. She is domiciled in Mexico. Thus, she is not considered a citizen of any state of the United States. She is a resident of Mexico and of Texas.

5.     The will regarding the estate of Jose Manuel Caballero has been probated in Cameron County, Texas.

6.     Cloverdip Investments, L.L.C. operated was established and set up by Chase Manhattan Private Bank (Switzerland), as Trustee of the Villarreal Caballero Trust, as a trust for the benefit of the Villarreal Caballero Trust. Cloverdip Investments, L.L.C. was set up by Chase Manhattan Private Bank (Switzerland) and by Eduardo Ramirez as a corporation under the laws of England or Whales, incorporated in a British territory. Cloverdip Investments, L.L.C. is inactive and has been since approximately 2003. Thus, it is not considered a citizen of any state of the United States.

7.     Mail for the Villareal Caballero Trust was to be sent to Cameron County, Texas. The initial principal of and the beneficiary of the Villarreal Caballero Trust was a citizen of Mexico and was domiciled in Mexico. Each of the current beneficiaries and representatives of the Trust are citizens of Mexico who are domiciled in Mexico. Thus, it is not considered a citizen of any state of the United States.

8.     JP Morgan Chase Bank, N.A., formerly known as or as successor in interest of JP Morgan Chase Bank, which was the successor in interest to or formerly known as The Chase Manhattan Bank, is a corporation organized under the laws of New York and the United States.

9.     J.P. Morgan Chase Bank, N.A. is authorized to conduct business in Texas, and it has conducted business in Texas, including dealings with Villarreal. Its predecessor

corporations were authorized to conduct business in Texas, and they conducted business in Texas, including dealings with Villarreal.

10.     The principal place of business of J.P. Morgan Chase Bank, N.A. is in New York. Alternatively, JP Morgan Chase Bank, N.A. has its principal place of business in Ohio.

11.     J.P. Morgan Chase Bank, N.A. has appeared in this lawsuit and may be served with this Complaint in this lawsuit by service or delivery of this Complaint upon its attorney in charge.   The registered agent of JP Morgan Chase Bank, N.A. is CT Corporations System, and its registered office for service is at 350 North St. Paul Street, Dallas, Texas 75201.

12.     J. P. Morgan Trust Company, N.A., is a corporation authorized to conduct business in Texas and conducting business in Texas.  It was organized under the laws of the State of California.

13.     J.P. Morgan Trust Company, N.A. may be served in this lawsuit by service or delivery of this Complaint upon its attorney in charge.  The registered agent of J.P. Morgan Trust Company, N.A. is CT Corporation System, and its registered office in Texas is at 350 North St. Paul Street, Dallas, Texas 75201.

14.     JP Morgan Securities, Inc. is the successor in interest to or was formerly known as JPMorgan Securities of Texas, Inc., which was the successor in interest to or was formerly known as Chase Securities of Texas, Inc.

15.     JP Morgan Securities, Inc. is a corporation authorized to conduct business in Texas and conducting business in Texas.  Its predecessor corporations were authorized to conduct business in Texas and conducted business in Texas.

16.     The predecessor corporations, which had dealings with plaintiffs, are inactive. One or more of them was incorporated under the laws of the State of Texas or had their principal operations in Texas.  The predecessor corporations were citizens of Texas, in whole or in part.

17.     JP Morgan Securities, Inc. has appeared in this lawsuit, and it may be served in this lawsuit by service or delivery of this Original Complaint upon its attorney in charge.

18.     The registered agent of JP Morgan Securities, Inc. is CT Corporation System, and its registered office is at 350 North St. Paul Street, Dallas, Texas 75201.

19.     Chase Bank of Texas, N.A. is a Texas State Financial Institution.  It was organized under the laws of the State of Texas, and its principal place of business at the time this lawsuit was filed was Texas.  Alternatively, Chase Bank of Texas, N.A. was inactive at the time this lawsuit was filed.

20.     The principal office of operations for Chase Bank of Texas, N.A. is at 712 Main Street, Houston, Texas 77002.

21.     Chase Bank of Texas, N.A. has an office in Cameron County, Texas. Alternatively, Chase Bank of Texas, N.A. had an office in Cameron County, Texas.  And it has had direct dealings with Villarreal in Cameron County, Texas regarding these matters.

22.     Chase Bank of Texas, N.A. may be served in this lawsuit by service or delivery of citation, together with a true and correct copy of this Complaint, on its registered agent at its registered address.  The registered agent of Chase Bank of Texas, N.A. is Barry Maxey, and its registered office is at 700 N. Pearl, 7th floor, North Tower, Dallas, Texas 75201.

23.     Alternatively, Chase Bank of Texas, N.A. is represented by the attorney in charge for other defendants in this case, Mr. Charles C. Murray.  Chase Bank of Texas, N.A. may be served by service or delivery of a true and correct copy of this First Original Complaint to Mr. Charles C. Murray.

24.     JP Morgan Investment Advisors, Inc. is a corporation authorized to conduct business in Texas and conducting business in Texas.  It was organized under the laws of the State of Ohio.

25.     JP Morgan Investment Advisors, Inc. has appeared in this lawsuit.  It may be served in this lawsuit by service or delivery of a true and correct copy of the First Amended Complaint upon its attorney in charge.

26.     The registered agent of JP Morgan Investment Advisors, Inc. is CT Corporation System, and its registered office is at 350 North St. Paul Street, Dallas, Texas 75201.

27.     Chase Manhattan Private Bank (Switzerland) conducted business and communications in the State of Texas.  Upon information and belief, such operations were authorized.

28.     Chase Manhattan Private Bank (Switzerland) does not have a registered agent or a registered office on file with the Secretary of State, Corporations Office.   Chase Manhattan Private Bank (Switzerland) did not have a registered agent or a registered office on file with the Secretary of State, Corporations Office at the time this lawsuit was filed.

29.     Chase Manhattan Private Bank, N.A. may be served by service or delivery of citation, together with a true and correct copy of the Original Petition, upon the Texas Secretary of State, with a request to forward the information to the corporation.  Upon

information and belief, the Texas Secretary of State should forward the information to Chase Private Bank, Attention: OFFICERS (including Mariel DeLorme if available), 63 Rue du Rhone, 1204 Geneva, Switzerland or by delivery of a copy of these materials to JP Morgan Chase & Company and/or by delivery of a copy of these materials to JP Morgan Securities, Inc., as outlined elsewhere.

30.     At the time this lawsuit was filed, Chase Manhattan Private Bank (Switzerland) could be served by service or delivery of citation, together with a true and correct copy of the Original Petition, upon the Texas Secretary of State, with a request to forward the information to the corporation. Upon information and belief, the Texas Secretary of State should have forwarded the information to Chase Private Bank, Attention: OFFICERS (including Mariel DeLorme if available), 63 Rue du Rhone, 1204 Geneva, Switzerland or by delivery of a copy of these materials to JP Morgan Chase & Company and/or by delivery of a copy of these materials to JP Morgan Securities, Inc., as outlined elsewhere.

31.     The attorney in charge for defendants has appeared for or represents Chase Manhattan Private Bank (Switzerland). Chase Manhattan Private Bank (Switzerland) is not active. This Complaint may be served by serving or delivering a true and correct copy of this First Original Complaint upon Charles C. Murray or upon an attorney who has appeared for or represents one or more of the defendants.

32.     Chase Manhattan Private Bank (Switzerland) was incorporated in or formed under the laws of Switzerland. Chase Manhattan Private Bank (Switzerland) is an alien. It is a citizen of a foreign country. Chase Manhattan Private Bank (Switzerland) is not a citizen of any state in the United States.

33.   Chase Manhattan Private Bank (Switzerland) conducted business and communications in the State of Texas.  Upon information and belief, such operations were authorized.

34.   JP Morgan (Suisse) S.A. does not have a registered agent or a registered office on file with the Secretary of State, Corporations Office.  JP Morgan (Suisse) S.A. did not have a registered agent or a registered office on file with the Secretary of State, Corporations Office at the time this lawsuit was filed.

35.   JP Morgan (Suisse) S.A. may be served by service or delivery of citation, together with a true and correct copy of the First Original Complaint, upon the Texas Secretary of State, with a request to forward the information to the corporation.  Upon information and belief, the Texas Secretary of State should forward the information to JP Morgan (Suisse) S.A., Attention: OFFICERS (including Mariel DeLorme if available), 63 Rue du Rhone, 1204 Geneva, Switzerland or by delivery of a copy of these materials to JP Morgan Chase & Company and/or by delivery of a copy of these materials to JP Morgan Securities, Inc., as outlined elsewhere.

36.   At the time this lawsuit was filed, JP Morgan (Suisse) S.A. could have been served by service or delivery of citation, together with a true and correct copy of the Original Petition, upon the Texas Secretary of State, with a request to forward the information to the corporation.  Upon information and belief, at the time this lawsuit was filed, the Texas Secretary of State could have served this entity by forwarding the information to JP Morgan (Suisse) S.A., Attention: OFFICERS (including Mariel DeLorme if available), 63 Rue du Rhone, 1204 Geneva, Switzerland or by delivery of a

copy of these materials to JP Morgan Chase & Company and/or by delivery of a copy of these materials to JP Morgan Securities, Inc., as outlined elsewhere.

37.     The attorney in charge for defendants has appeared for or represents JP Morgan (Suisse) S.A.  This Complaint may be served upon JP Morgan (Suisse) S.A. by serving or delivering a true and correct copy of this First Original Complaint upon Charles C. Murray or upon an attorney who has appeared for or represents one or more of the defendants.

38.     .JP Morgan (Suisse) S.A. was incorporated in or formed under the laws of Switzerland.  JP Morgan (Suisse) S.A. is an alien.  It is a citizen of a foreign country.  JP Morgan (Suisse) S.A. is not a citizen of any state in the United States.

39.     Alphonzo Gonzales is an individual residing in Texas, and he is a Texas citizen. Eduardo Ramirez is an individual residing in Texas, and he is a Texas citizen.

40.     The former investment managers or coordinators of the investment accounts or assets in trust on behalf of the decedent or one or more of the plaintiffs mismanaged the funds and are named as John Doe Defendants.  Upon information and belief, one or more of them are residents and citizens of the State of Texas.

41.     Defendants have not claimed jurisdiction based upon alienage.  Because each of the plaintiffs are aliens, and the defendants include at least one alien – Chase Manhattan Private Bank (Switzerland) and JP Morgan (Suisse) S.A. – federal jurisdiction based upon diversity of citizenship or alienage is improper.  In addition, defendants have only asserted diversity of citizenship jurisdiction.   And such jurisdiction does not exist properly where, as here, each of the plaintiffs is an alien.   None of the plaintiffs are citizens of Texas, contrary to defendants' claims.  And if they were, complete diversity

would not exist;  both Alphonzo Gonzales and Eduardo Ramirez are Texas citizens, upon information and belief, and one or more of the John Doe Defendants are believed to be Texas citizens.

Additional Venue Facts

42.	Venue is, was, or would be proper in Cameron County.

43.	All or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Cameron County.

44.	Venue of the state court action was proper in Cameron County pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code.  Venue was also proper in Cameron County pursuant to Section 15.032 of the Texas Civil Practice and Remedies Code.

45.	Cameron County is the county in which the loss at issue occurred.  Cameron County is the county in which the account holder resided at the time the cause of action accrued.

46.	Cameron County is also the county in which the Representative of the Estate of Jose Manuel Villarreal Caballero has resided at all relevant times, including during the management of the account by JP Morgan, the accrual of the cause of action, and the filing of this lawsuit.

47.	The will of Jose Manuel Villarreal Caballero has been probated in Cameron County, Texas.

48.	Meetings between Villarreal and JP Morgan occurred in Cameron County, Texas.

49.	Chase Manhattan Private Bank (Switzerland) conducted operations within or had contacts sufficient to satisfy "minimum contacts" analysis within Texas.

50.     JP Morgan (Suisse) S.A. conducts or has conducted operations within or had contacts sufficient to satisfy "minimum contacts" analysis within Texas.

51.     Chase Manhattan Private Bank (Switzerland) did business with Villarreal.  Chase Manhattan Private Bank (Switzerland) had dealings with Villarreal.  Some or all of these business dealings occurred within Texas.

52.     JP Morgan (Suisse) S.A. did business with Villarreal.  JP Morgan (Suisse) S.A. had dealings with Villarreal.  Some or all of these business dealings occurred within Texas.

Facts

53.     Villarreal incorporates the facts stated above by reference.

54.     Villarreal and JP Morgan had an ongoing course of business.  JP Morgan was the investment agent and broker for Villarreal.  JP Morgan provided investment management services to Villarreal.  JP Morgan supervised or was responsible for activities, acts, or omissions regarding the account.

55.     At all times relevant to this lawsuit, JP Morgan has owed Villarreal fiduciary duties.  These duties include the duty of good faith and fair dealing, a fiduciary responsibility concerning investment issues and payments, and a duty to exercise the utmost care on behalf of its investment client, and a duty to invest conservatively and with prudence.

56.     At the time of inception and shortly thereafter, Eduardo Ramirez made representations to Jose Manuel Villarreal Caballero regarding the investments on his behalf and on behalf of Villarreal.

57.     At the time of inception and shortly thereafter, Eduardo Ramirez advised Jose Manuel Villarreal Caballero that he and JP Morgan possessed skill and expertise in investments and stock market transactions, including in the trust and fiduciary context.

58.     At the time of inception and throughout its dealings with Jose Manuel Villarreal Caballero, JP Morgan and Eduardo Ramirez knew that the investor was a foreign national, a citizen of Mexico, who was not experienced with the stock markets or the investments that JP Morgan intended to utilize on his behalf or on behalf of Villarreal.

59.     At the time of inception and throughout its dealings with Jose Manuel Villarreal Caballero, JP Morgan and Eduardo Ramirez understood that Jose Manuel Villareal Caballero was depending and relying upon their expertise, and they represented they would handle his funds as they would handle and care for their own funds.

60.     JP Morgan represented to Villarreal that his assets would be held in trust and invested on a fiduciary or trust-relationship basis.  JP Morgan represented to Villarreal that his investments would be handled by them, as experts, and that they would be consistently managed and monitored for growth and to ensure a strategy of "growth."

61.     JP Morgan promised at inception, shortly after inception, and at various times during the relationship, including by oral representation, that the funds of Villarreal would be managed in accordance with the prudence, skill, and fiduciary care attendant to a fiduciary or trust relationship.

62.     JP Morgan indicated to Villarreal that it would exercise such skill, prudence, and fiduciary obligations on behalf of Villarreal.

63.     JP Morgan was compensated for these fiduciary services on behalf of Villarreal.

64.     From time to time, JP Morgan represented to Villarreal that his investments were progressing or doing pretty well, and that their performance was in keeping with their expectations.

65.     Eduardo Ramirez and JP Morgan understood or learned contemporaneously that Jose Manuel Villarreal Caballero had cancer or was ill.  Eduardo Ramirez or JP Morgan understood or learned contemporaneously that Jose Manuel Villarreal Caballero was

66.     JP Morgan did not keep Jose Manuel Villarreal Caballero fully apprised regarding his investments or their performance.  They understood that he expected to be orally advised if substantial losses were sustained.  Jose Manuel Villarreal caballero was advised that his investments were being managed for continued growth.  He was not advised that this should be changed, or was not being managed consistently with this representation.  But it was not.

67.     JP Morgan advised Villarreal that payments to Jose Manuel Villarreal Caballero were to be paid from income earned on the investments.  Villarreal was advised that growth would be sufficient to pay $40,000 per month from the income on the invested funds.

68.     If income was not earned, or substantial underperformance by JP Morgan occurred, Villarreal should have been alerted in order that the investor could determine if alterations were in order.   JP Morgan promised actions involving risk would only be undertaken in accordance with specific investment directives received from Villarreal.

69.     Upon information and belief, no specific investment directives for high risk activities or investments were received from Jose Manuel Villarreal Caballero.   JP

Morgan repeatedly undertook high risk activities or investments, allegedly on behalf of Villarreal.

70.     Upon information and belief, no specific investment directives for high risk activities or investments were received from representatives of Jose Manuel Villarreal Caballero.  Villarreal did not provide such specific investment directives, and they were not contemporaneously consulted and advised regarding the extraordinary risk levels undertaken by JP Morgan in the investments.

71.     JP Morgan engaged in high risk activities, and it engaged in churning or high rates of turnover in investments.  JP Morgan invested based upon a higher level of risk than that of which it advised Jose Manuel Villarreal Caballero.  JP Morgan did not advise Jose Manuel Villarreal Caballero or Villarreal that the "growth" strategy promised was not the strategy it implemented.

72.     In fact, JP Morgan was not experiencing "growth" in investments on behalf of Villarreal.  JP Morgan continued to make the monthly payments to Jose Manuel Villarreal Caballero as though the investments were performing properly and successfully.

73.     At inception and shortly after inception, and from time to time, JP Morgan promised the personal attention of the representatives who made the sales pitches to recruit the business of Jose Manuel Villarreal Caballero.  In practice, the account of the investor experienced a high level of turnover.

74.     JP Morgan knew and understood that Villarreal desired a conservative investment strategy, sufficient to ensure that the income stream paid to the investor was paid from or by the income on the investments.  In truth, JP Morgan was raiding the principal in order

to make these payments that were to be paid to the beneficiary or beneficiaries from growth in the assets being managed and monitored by JP Morgan.

75.     JP Morgan did not provide transparent updates and disclosure of information on a timely basis.  Indeed, when Villarreal requested information regarding the losses, after learning of the extreme rate of depletion, the nature of the risks undertaken and the excessive rates of turnover regarding stocks still were not disclosed.  Antonio Villarreal had difficulty obtaining the return or release of the investment funds.

76.     Villarreal was required to hire an attorney in order to dislodge information and receive the return of the remaining funds following their depletion by JP Morgan.

77.     Upon information and belief, Alphonzo Gonzales, a JP Morgan representative in Houston, knew of the difficulties experienced by Villarreal in obtaining information and had knowledge of the extraordinary risks undertaken by JP Morgan, and the resulting depletion, but he continued to claim and represent that JP Morgan had performed in accordance with market averages or expectations.

78.     The risk levels undertaken by JP Morgan and the rate of turnover of transactions were not in keeping with industry averages or prudent investment strategies by a fiduciary, especially without extensive disclosures and specific investment directives. The transaction turnover rate, akin to "churning", were far above expectations or prudent levels, leading to suspicions and  apparent instances of excessive trading and turnover ratios, perhaps based upon commission expectations or earnings rather than investment results.

79.     The Joint Discovery / Case Management Plan Under Rule 26(f) of the Federal Rules of Civil Procedure has been filed in this case, and it is incorporated by reference.

In addition, the parties have already agreed that Initial Disclosures will be shared or exchanged on November 30, 2006. In addition, as additional or further information is requested from plaintiffs in discovery, it will be produced and shared with defendants, and discovery responses will be served by the plaintiffs in accordance with the Federal Rules of Civil Procedure.

<u>Breach of Contract</u>

80.    Villarreal incorporates the facts state above in this Complaint by reference.

81.    JP Morgan offered to provide and provided investment broker services for Villarreal. Villarreal accepted, and JP Morgan served as the investment broker or agent for Villarreal.

82.    JP Morgan and Villarreal mutually assented to the arrangement. The agreement provided for mutuality of obligations. Some of the money being managed by JP Morgan was retained by or paid to JP Morgan as payment for the fiduciary investment management services being provided to Villarreal. JP Morgan was to provide its duties consistent with its fiduciary duties to Villarreal.

83.    The parties entered contracts whereby JP Morgan was supposed to act on behalf of Villarreal and in accordance with a relationship of trust, and in connection with JP Morgan's skill and experience.

84.    On or about March 12, 1998, JP Morgan organized trust arrangements on behalf of Villarreal. JP Morgan advised plaintiffs regarding the appropriate mechanisms and organizational structure to ensure maximized performance and tax benefits. Foreign entities were formed, and transactions were routed through foreign JP Morgan affiliates, including the Swiss entity or entities.

85.     Villarreal was advised that these entities were for the purpose of tax structuring engineered by JP Morgan as part of its expertise, but that the dealings were being conducted in Texas and that Texas courts would be appropriate in the event of irregularities.

86.     Now, these Swiss entities are resisting appearance before this Court.  JP Morgan entities claim that none of them are Texas based.  Villarreal was not advised as these entities were systematically changed from Texas entities to those that could or would claim that they should not be answerable in Texas state court.  Villarreal should have been advised, as this information was material.  Jose Manuel Villarreal Caballero contracted with and engaged services of companies that contained specifications of Texas dealings in their titles.  But now these dealings are suddenly presented as outside the reach of Texas courts.

87.     The contractual terms are unconscionable, and they provide JP Morgan with extraordinary rights based upon the expectation that they will exercise their superior knowledge and skill.  They even provide that the Mexican citizen, known to be inexperienced in such matters as stock transactions, will be deemed to be English or Welsh upon his demise.

88.     JP Morgan breached its promises and obligations to manage properly the investments on behalf of Villarreal.  Upon information and belief, JP Morgan's failure(s) were the proximate cause of damages to Villarreal.

<u>Breach of Fiduciary Duty</u>

89.     The facts itemized in this Complaint above are incorporated here as though restated in their entirety.

90.     When one person is under a duty, created by law or contract, to act for or give advice for the benefit of another upon matters within the scope of the relationship, the person has a fiduciary relationship with the other person. *Stephans v. Laird*, 846 S.W. 2d 895, 901 (Tex. App. – Houston [1st Dist.] 1993, writ denied); *see Lacy v. Ticor Title Insurance Co.*, 794 S.W. 2d 781, 788 (Tex. App. – Dallas 1990, *writ denied per curiam*, 803 S.W. 2d 265 (Tex. 1991).

91.     JP Morgan owed Villarreal fiduciary duties.  The general duties that fiduciaries owe include a duty of loyalty and utmost good faith, a duty of candor, a duty to refrain from self-dealing, which extends to dealings with a fiduciary's agents, employees, and other persons whose interests are closely identified with those of the fiduciary, a duty to act with integrity of the strictest kind, a duty of fair, honest dealing, and a duty of full disclosure – that is, a duty not to conceal matters that might influence a fiduciary's actions to the principal's benefit.

92.     JP Morgan was the investment manager and agent for Villarreal.  Agents owe a fiduciary duty to their principals. *See State v. Durham*, 860 S.W. 2d 63, 66 (Tex. 1993); *Hartford Casualty Insurance Company v. Walker Cty. Agency, Inc.*, 808 S.W. 2d 681, 687-88 (Tex. App. – Copus Christi 1991, no writ).

93.     Even apart from the fiduciary duty created by this formal relationship, fiduciary duties arise under informal relations that exist whenever one person places a special confidence in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing confidence. *See Texas Bank & Trust Co. v. Moore*, 595 S.W. 2d 502, 507 (Tex. 1980); *Lacy*, 794 S.W. 2d at 788.

94.     JP Morgan breached its fiduciary duties to Villarreal.   The defendant's breach resulted in either (1) injury to Villarreal, or (2) benefit to JP Morgan – or both.

<u>Violations of the Texas Deceptive Trade Practices Act</u>

95.     The facts set forth above are incorporated here as though set forth in their entirety.

96.     Villarreal was a consumer who sought to acquire investment management services and broker services.   Such services are considered a service under the Texas Deceptive Trade Practices Act ("DTPA").

97.     The DTPA is found at Texas Business & Commerce Code, Sections 17.41, and following.  JP Morgan can be sued as defendants under the DTPA.  None of them is exempted from liability under Tex. Bus. & Comm. Code Section 17.50 (a) (1) or by any other statute.  Each of the defendants committed wrongful acts under the DTPA.

98.     JP Morgan warranted expressly or impliedly that the investment management services provided and the broker services were fit for a particular purpose.  JP Morgan engaged in unconscionable actions.  Each of the JP Morgan defendants are liable under the DTPA for their acts or omissions that are violations of the Texas Deceptive Trade Practices Act.

99.     In addition, JP Morgan violated the following "laundry list" violations under the DTPA:

•     representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities they do not have;

•     representing that goods or services are of a particular standard, quality, or grade, if they are of another;

- representing that an agreement confers or involves rights, remedies, or obligations that it does not involve, or that are prohibited by law;

- representing that a guaranty or warranty confers or involves rights or remedies that does not have or involve; and

- failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed.

100. The violations or breaches of the DTPA by JP Morgan were the producing cause of damages to Villarreal. Because JP Morgan's violations of the DTPA were each knowing violations, Villarreal seeks recovery of additional damages of up to two times the actual damages to Villarreal, plus attorneys fees, plus court costs.

Fraud

101. The facts set forth above are incorporated here as though set forth in their entirety.

102. JP Morgan has committed fraud and the JP Morgan Defendants are responsible for actual and exemplary damages to Villarreal as a result. As to each of the JP Morgan defendants:

1. the defendant made a representation to the plaintiff;

2. the representation was material;

3. the representation was false;

4. when the defendant made the representation, it

   (a) knew the representation was false, OR

(b)      made the representation recklessly, as a positive assertion, and without knowledge of its truth;

5.      the defendant made the representation with the intent that Villarreal would act on it;

6.      Villarreal relied on the representation; and

7.      the representation caused injury to Villarreal.

103.    As to JP Morgan, the false, material representations at issue included misstatements or omissions regarding JP Morgan's relationship with investment funds in which it invested and false statements regarding the level of risk that would be involved or incurred.   This happened on an ongoing basis and throughout the timeframe of the relationship, for approximately 1998 through and including 2003.

104.    JP Morgan represented that it was following the financial status of investments it undertook and managed on behalf of Villarreal consistently, and that the investments were consistent with their instructions and promises regarding investment practices and risk.

105.    JP Morgan knew that the financial condition and characteristics of the investments made or the entities invested in were not consistent with its promised scope of activities and portfolio management and could detrimentally affect the performance obtained or resulting from the services sought or obtained regarding the claims, from the perspective of the fiduciary, whose money was being managed and protected.

<u>Damages</u>

106.    By reason of Defendants' conduct, Plaintiff has suffered actual damages in excess of the jurisdictional requirements for federal court jurisdiction, as has been previously stated by defendants.    Defendants have superior access to the monetary damage calculations caused to plaintiffs.  Defendants had the money in their possession, based upon the trust documents and relationship.  Defendants squandered the money, causing damages estimated on a preliminary basis at five million dollars.

107.    Because the damages were caused by knowing violations by Defendants of the Texas Deceptive Trade Practices Act or by actions punishable by exemplary damages, plaintiffs seek additional damages of up to two times the actual damages suffered, plus its attorneys' fees and costs of court.

<u>Conditions Precedent</u>

108.    All conditions precedent to the filing, prosecution, and success of these claims have occurred, have been performed, or have been met.  All conditions precedent to entry of judgment in favor of each plaintiff have occurred, have been performed, or have been met.

<u>Prayer for Relief</u>

109.    Villarreal requests that upon trial of this cause of action, this Court enter judgment in favor of Villarreal and against the defendants in the full amount sought against each defendant.   Villarreal requests attorneys' fees and costs of Court, as allowed by law. Villarreal further seeks pre-judgment interest and post-judgment interest be assessed by this Court, each at the maximum legal rate allowed by law.

110.    Villarreal seeks all such other and further relief to which any or each of them may show itself entitled, whether general or special, and whether at law or in equity.

                              Respectfully submitted,

show itself entitled, whether general or special, and whether at law or in equity.

                              Respectfully submitted,

                              **DAVID K. WILLAIMS**

                              David K. Williams
                              So. Dist. Tex. Fedl. ID No. 10010
                              Texas State Bar No. 21524300
                              dkw002@aol.com
                              201 East University Drive
                              Edinburg, Texas 78539
                              Preferred Telephone – Mobile Number:
                              (956) 212-8415
                              Alternative Telephone:  (956) 386-1900
                              Telecopier:  (956) 386-1922

                              **ATTORNEY-IN-CHARGE  FOR  EACH
                              OF  THE  PLAINTIFFS,  JOINTLY
                              REFERRED TO AS VILLAREAL**

**OF COUNSEL:**

**THE GARCIA•WILLIAMS LAW FIRM**
Felipe Garcia, Jr.
Texas State Bar No. 07633000
201 East University Drive
Edinburg, Texas 78539
Telephone:  (956) 386-1900
Telecopier:  (956) 386-1922

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2006, I served the counsel of record for each party that has appeared and answered with a true and correct copy of this

document – Plaintiffs' First Original Complaint.   This service was accomplished, in conjunction with the Federal Rules of Civil Procedure, by enclosing a true and correct copy of the document in a postage pre-paid wrapper (envelope).   Each envelope or wrapper was addressed to the counsel for the defendants as set forth below.   The envelopes were deposited on the date specified, November 13, 2006, in an approved receptacle of the United States Postal Service, for delivery via first class United States mail.

A courtesy copy was also sent via facsimile on the next business day to Mr. Charles C. Murray at (956) 686-06109 and to Gary R. Powell at (214) 740-8800.   The parties have previously agreed that if this level of specificity is deemed by defendants in good faith to be insufficient pursuant to the Federal Rules of Civil Procedure, they will address this issue via conference with me, and we will endeavor to work out any differences prior to seeking Court resolution or intervention.

David K. Williams